Filed 5/13/22  In re M.H. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re M.H. et al., Persons Coming Under the Juvenile Court Law. | B313118 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP00653A-B) |
| Plaintiff and Respondent, | |
| v. | |
| R.H. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debra Archuleta, Judge.  Affirmed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant R.H.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant J.G.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Father R.H. and mother J.G. appeal the juvenile court's order terminating their parental rights to daughters M.H. and T.H., arguing the Los Angeles County Department of Children and Family Services (Department) made an inadequate inquiry under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.).  We affirm.

## BACKGROUND

M.H. and T.H. were detained from mother and father after infant T.H. was taken to the hospital and doctors discovered numerous fractures in varying stages of healing, which were deemed suspicious for physical abuse.

The petition states the children have no known Indian ancestry. At the February 4, 2020 detention hearing, mother and father filed parental notification of Indian status forms (ICWA–020) indicating "I have no Indian ancestry as far as I know."  The juvenile court acknowledged that "[b]oth parents have indicated under penalty of perjury that they do not believe they have Native American ancestry. Based thereon, the court finds that the ICWA does not apply to these two children."  The minute order from the hearing recites that the "[p]arents are to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA status."  A similar warning is recited in boldface font on the ICWA–020 forms.

The Department's jurisdiction and disposition report reflects that mother once again denied any Indian ancestry on March 10, 2020.  Mother reported that maternal grandmother is Filipino, and maternal grandfather is American and Filipino.  Because father did not make himself available to communicate with any representative of the Department after the detention hearing, the Department had no further opportunity to ask him about his social history or ancestry. The Department contacted maternal grandmother and paternal grandmother, but the record does not reflect whether they were asked about any possible Indian ancestry.

On June 14, 2021, the juvenile court terminated mother's and father's parental rights.  This timely appeal followed.

## DISCUSSION

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8.)  Welfare and Institutions Code section 224.2 imposes on the juvenile court and the Department "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child . . . ." (*Id.*, subd. (a).)  "If a child is placed into the temporary custody of a county welfare department[, the department] has a duty to inquire whether that child is an Indian child[, including] asking the child, parents, . . . extended family members, [and] others" whether the child is or may be an Indian child.  (*Id.*, subd. (b).)  The adequacy of the ICWA inquiry is reviewed for sufficiency of the evidence, and the harmless error rule applies on appeal.  (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1160–1162; but see *In re S.S.* (2022) 75 Cal.App.5th 575, 581–582 [acknowledging that the standard for assessing prejudice in ICWA cases is unsettled].)

Mother and father argue the Department made an inadequate initial inquiry because it did not ask the children's grandmothers about possible Indian ancestry, and that the error was prejudicial because the Department "failed to obtain information that appears to have been both readily available and potentially meaningful." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.)  Their reliance upon *In re Benjamin M.* is unpersuasive.  In that case, in finding the Department's initial inquiry was inadequate and the error was prejudicial, the court observed that one parent was not available to report or deny Indian ancestry, and the Department never inquired of the missing parent's available relatives.  (*Id.* at pp. 744–745.)  Here, both mother and father were available (although father later stopped communicating with the Department), and more than once denied any Indian ancestry.  We therefore reject the parents' "unvarnished

3

contention that additional interviews of [relatives] would have meaningfully elucidated the children's Indian ancestry." (*In re Darian R.* (2022) 75 Cal.App.5th 502, 510.)[1]

## DISPOSITION

The order terminating parental rights is affirmed.

GRIMES, Acting P. J.

I CONCUR:

HARUTUNIAN, J.*

---

[1] The dissent argues we cannot determine if the error is harmless because we do not know what extended family members would say. But we do have reason to believe we know what they would say because the children's parents have certified they have no information that Indian heritage exists in their lineage. And harmless error does not equate with absolute certainty. Courts routinely hold that failing to admit certain evidence was harmless error, even though the possibility exists that the evidence might strike a particular juror differently than the reviewing court. The only way to know for sure is to retry every case where there is error. That approach itself results in frequent needless harm, delay and expense, which is why the harmless error doctrine ultimately results in a just outcome.

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**WILEY, J., Dissenting.**

 I respectfully dissent.  With little effort, the Department could have asked the grandmothers about Indian heritage, but inexplicably did not.  I cannot tell if this error is harmless because, due to the Department's error, we lack information about what these extended family members would have said.

 If appellants have brought this appeal to achieve delay, I condemn this tactic.  Any delay, however, need not be significant if the Department begins following the law with alacrity.  Failure to conduct a proper inquiry leaves a case vulnerable to collateral attack, which "would be devastating to the concepts of finality and permanency."  (*In re A.R.* (2022) 77 Cal.App.5th 197, 208.)


WILEY, J.

1